## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC HILL, et al., | : | CIVIL ACTION |
| Plaintiffs | : | |
| | : | |
| v. | : | NO. 05-6574 |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |
| Defendants | : | |

## M E M O R A N D U M

STENGEL, J.                                                                June  30, 2008

This is an action brought by a correctional officer and his wife against the City of

Philadelphia and several supervisory employees and administrators of the Philadelphia

Prisons System, including Commissioner Leon King II, Warden Louis Giorla, Deputy

Warden Marvin Porter, Warden Darryl Anderson, and Captain Sharon Hatcher.  The

individual defendants are being sued in both their official and personal capacities.

Plaintiff Eric Hill's claims include constitutional violations pursuant to 42 U.S.C. § 1983,

and derivative state law claims, i.e., intentional infliction of emotional distress, and

defamation.  Plaintiff Katrina Hill's claim is for a loss of consortium.

The defendants have filed a motion for summary judgment to which the plaintiffs

have not responded.  For the following reasons, I will grant the motion in its entirety.

## I.  BACKGROUND

In September 1987, Officer Hill began his career as a correctional officer with the

City of Philadelphia Prisons System.  Am. Compl. ¶ 11.  In 1996, Officer Hill became a

union delegate representing and advocating for the rights of his co-workers by presenting

grievances, attending informal meetings and formal hearings, and providing documentation to members of the prison administration.  Id. at ¶ 12.

The complaint alleges that Officer Hill was approached by Officer Denean Osborne, a fellow correctional officer, regarding inappropriate sexual behavior directed toward her by Defendant Porter, her superior at the time.  Id. at 13.  Defendant Porter allegedly made inappropriate sexual remarks toward Officer Osborne.  When his affections were not returned, Defendant Porter allegedly began a systematic plan of retaliation against Officer Osborne that included verbal and written warnings for alleged uniform violations.

Officer Hill filed two grievances against Defendant Porter on Officer Osborne's behalf.  Id. at ¶ 16.  Donnie Moore, the president of the local union, requested a meeting with Defendant Porter and Officer Hill to discuss these allegations.  Id. at ¶ 17.  The meeting involved a heated discussion about Officer Osborne's claims of sexual harassment.

At the conclusion of this meeting, Defendant Porter requested that Officer Hill remain to discuss another matter.  President Moore immediately asked if it were necessary for him to remain as Officer Hill's representative.  Id. at ¶ 19.  Defendant Porter allegedly misrepresented the situation as one that would not be disciplinary in nature so President Moore would leave the office.  Id.  Having received allegations of sexual misconduct against Officer Hill by a female inmate, Defendant Porter contacted Officer Peter Shaw,

2

another correctional officer who served as the union shop steward, and asked him to come to the meeting.  Id. at ¶ 20.  When Officer Shaw arrived, Defendant Porter began to question Officer Hill about the alleged sexual misconduct and inappropriate behavior with the inmate without giving Officer Hill an opportunity to confer or even request representation.  Id.  Although Defendant Porter received allegations against two other correctional officers at the same time, he only interrogated Officer Hill at that meeting.

Defendant Porter was vague and evasive when questioned by Officer Hill about the allegations.  Defendant Porter ordered Officer Hill to write a memorandum regarding the allegations, but according to the complaint, Officer Hill objected because the allegations were false making the task impossible.  Id. at ¶ 21.  Later, Defendant Porter reported Officer Hill to Defendant Giorla for failure to submit the memorandum as ordered.  Defendant Giorla ordered Officer Hill to come to his office and asked him specific questions about the sexual misconduct allegations.  When Officer Hill answered the questions, Defendant Giorla allegedly humiliated and chastised him before also ordering him to write a memo memorializing their conversation.  Defendant Giorla requested Defendant King to issue a formal reprimand to Officer Hill for failure to obey a direct order.  Id. at ¶ 28.

Officer Hill alleges that the investigation against him was not conducted according to the procedures established by the Philadelphia Prisons System.  Id. at ¶ 29.  Those procedures require that the Internal Affairs Unit conduct the investigation in a

confidential manner.  Id. at ¶ 30.  Nevertheless, notwithstanding the required

confidentiality of the proceedings, Officer Hill began to receive inquiries from other

employees of the prison system about the allegations shortly after the investigation began.

Id. at ¶ 30.  He also began to receive telephone calls at home concerning the accusations

which put a further strain on his marriage.  Eventually, the accusations against Officer

Hill for sexual misconduct were found to be unsubstantiated.

     The complaint also alleges that after Officer Hill filed the grievances on Officer

Osborne's behalf, Officer Hill was continually denied promotions without cause despite

stellar performance reviews.  Id. at ¶¶ 35, 36.  Also as a result of these grievances, the

prison system under the leadership of Defendants Porter, Giorla, and King allegedly

continued to be vigilant in retaliating against Officer Hill.  For example, on January 25,

2005, Defendant Porter and Defendant Giorla sat in a vehicle that blocked Officer Hill's

vehicle in order to allow another correctional officer to issue him a parking ticket.  Id. at ¶

32.  There were other cars also parked in this unauthorized zone, but Officer Hill's

vehicle was the only one ticketed.  Officer Hill took time off from work to defend against

the ticket which was finally dismissed.  Id.  He then learned that the pre-approved

vacation day he took in order to challenge the ticket had been changed from a vacation

day to an administrative leave day.  After confronting Defendant Hatcher and Defendant

Porter about this change, Officer Hill was informed that there was a new policy that

vacation days could not be taken during off-season.  Officer Hill successfully filed a

grievance, and the matter was eventually disposed of in his favor.

Within a few months, Officer Hill was again subjected to disciplinary action. After speaking directly to Defendant King in reference to the incidents of retaliation and a possible promotion, Defendant King imposed a two-step reduction in pay, a three-day suspension, and Officer Hill's removal from the prestigious Correctional Emergency Response Team.  Id. at ¶ 33.  This disciplinary action was based on an allegation by Defendant Hatcher that Officer Hill was in possession of a cellphone on prison property, and that he had abandoned his post, both against prison regulations.  After hearings and an appeal to the Civil Service Commission, Officer Hill was again exonerated.  He had been given express permission to possess his cellphone by Warden Anderson and went to his car to place the phone inside the car when spotted by Defendant Hatcher.  Id.

As a result of this treatment, Officer Hill has suffered from migraine headaches, high blood pressure, nosebleeds and a decrease in sexual activity.  Id. at ¶ 37.

In her claim for loss of consortium, Plaintiff Katrina Hill claims she has suffered from strain on her marriage given the accusations of extramarital sexual activity against her husband, a loss of his ability to provide the same level of traditional support as her husband, and an adverse impact upon their sex lives.  Id. at ¶¶ 48-49.

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is

5

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."  Id. at 325.  After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. at 322.  Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the opposing party.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.  The court must decide not whether the evidence

unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.  Id. at 252.  If the non-moving party has exceeded the mere scintilla of evidence threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent.  Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III. DISCUSSION

### A. Section 1983 Claims

Title 42 of the United States Code § 1983 provides remedies for deprivations of rights established in the Constitution or federal laws.  It does not, by its own terms, create substantive rights.  Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979).  Section 1983 provides, in part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress.

In suits against municipal employees who act in a supervisory capacity, the Supreme Court has differentiated between claims against those individuals in their personal (individual) capacities and their official capacities.  See Kentucky v. Graham,

7

473 U.S. 159, 165-66 (1985).  Personal capacity suits seek to impose liability on government officials for acts performed under color of law.  Id.  Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."  Id. (quoting Monell v. Dep't of Soc. Serv. of the City of New York, 436 U.S. 658, 690, n. 55 (1978)).  Here, Officer Hill is expressly suing the individual defendants in both their personal capacities and their official capacities.

The Supreme Court has held that official capacity suits cannot be maintained against state officers acting in their official capacity on behalf of the state.  See Hafer v. Melo, 502 U.S. 21, 27 (1991) (state officers sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them) (citing Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989)); see also Powell v. Ridge, 189 F.3d 387, 401 (3d Cir. 1999).  Here, Officer Hill has included the City of Philadelphia as a defendant this action.  Thus, I will strike that portion of the amended complaint which references Commissioner King, Warden Giorla, Deputy Warden Porter, Warden Anderson, and Captain Hatcher as defendants being sued in their official capacities.

An official sued under § 1983 in a personal capacity action, however, can be held liable if he acted under color of law to deprive a person of a federal right.  See Hafer v. Melo, 502 U.S. at 27; Powell v. Ridge, 189 F.3d at 401; Kentucky v. Graham, 473 U.S. at 166.  The Third Circuit has expressly applied the standards for municipality liability for §

8

1983 violations to cases alleging individual liability.  See Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989) ("…the standard of individual liability for supervisory public officials will be found to be no less stringent than the standard of liability for the public entities that they serve.  In either case, a 'person' is not the 'moving force [behind] the constitutional violation' of a subordinate, unless that 'person' - whether a natural one or a municipality - has exhibited deliberate indifference to the plight of the person deprived") (internal citations omitted)); see also Brown v. Muhlenberg Twp., 269 F.3d 205, 215 (3d Cir. 2001).

There are two theories of supervisory liability under which a plaintiff can sue a municipal defendant in a personal capacity action.  See A.M. v. Luzerne County Juvenile Det. Ctr., 372 F.3d 572, 578 (3d. Cir. 2004).  Under the first theory, defendants can be sued as policy-makers "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy,[1] custom,[2] or practice which

---

[1] A municipal policy, for purposes of § 1983, is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a government] body's officers."  Monell, 436 U.S. at 690; see also Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000) ("Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict"). (citation omitted).  Such a policy "generally implies a course of action consciously chosen from among various alternatives."  Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985). Limiting liability to identifiable policies ensures that municipalities are only liable for "deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality."  Board of County Commissioners v. Brown, et al., 520 U.S. 397, 403-404 (1997).

[2] A custom, while not formally adopted by the municipality, may lead to liability if the

(continued...)

9

directly caused [the] constitutional harm.'" Id. (citing Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989).

The second theory provides for personal liability if the plaintiff can show that a supervisor "participated in violating his rights, or that he directed others to violate them, or that he…had knowledge of and acquiesced in his subordinates' violations." Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990)).  There is no liability for personal capacity actions based only on a theory of *respondeat superior*.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Monell, 436 U.S. at 693.

Thus, for Officer Hill to be successful in his personal capacity claims against Commissioner King, Warden Giorla, Deputy Warden Porter, Warden Anderson, and Captain Hatcher, he will have to show either that: (1) these defendants were policy makers in the City of Philadelphia who established or maintained policies, customs, or practices which directly caused the constitutional harm to him, and that they did so with deliberate indifference to the consequences; or (2) these defendants personally participated in violating his constitutional rights, or directed others to violate those rights, or had knowledge of and acquiesced in the violations of their subordinates.  It is clear

---

[2](...continued)
"relevant practice is so widespread as to have the force of law."  Brown, 520 U.S. at 404. This requirement should not be construed so broadly as to circumvent Monell: "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy..."  Oklahoma City v. Tuttle, 471 U.S. at 823-824.

from a reading of the Amended Complaint that Officer Hill is pursuing the latter theory of liability.  There is no allegation that these individual defendants were policy makers who were involved in establishing or maintaining policies, customs, or practices which could have caused the alleged constitutional harm to Officer Hill.[3]

### 1. First Amendment

Officer Hill claims that he "was engaged in union activity which is protected speech under the First Amendment to the United States Constitution."  Am. Compl. ¶ 39. "Because of the resultant retaliation inflicted upon him" by the defendants, Officer Hill alleges that he "has suffered a deprivation of his free speech rights."  Id. at ¶ 40.

As a general rule, citizens do not relinquish all of their First Amendment rights when they become public employees.  Pickering v. Board of Education, 391 U.S. 563 (1968).  However, the state "has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general."  Id. at 568.  Accordingly, courts must arrive at a balance between the interests of the employee, as a citizen, in commenting upon matters

---

[3]  For this same reason, I will grant summary judgment in favor of the City of Philadelphia on Counts I and II.  A municipality may be held liable under § 1983 only if the plaintiff can "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991) (citing Monell, 436 U.S. at 694).  A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Officer Hill has failed to identify any policy, custom, or practice of the City of Philadelphia that allegedly violated his civil rights.  Accordingly, his § 1983 claims against the City must fail.

of public concern and the interests of the state, as an employer, in promoting the efficiency of the public services it performs through its employees.  Id.

As a public employee alleging a First Amendment retaliation claim, Officer Hill must show: (1) that the activity in question is protected by the First Amendment; and (2) that the protected activity was a substantial factor in the alleged retaliatory action.  See Hill, et al. v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005).  The first factor is a question of law; the second factor is a question of fact.  Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006).  Once the plaintiff satisfies these two elements, the defendants may defeat the plaintiff's claim by demonstrating that the same adverse action would have taken place in the absence of the protected conduct.  Hill, et al. v. City of Scranton, 411 F.3d at 125.

A public employee's statement is protected activity when:  (1) in making it, the employee spoke as a citizen; (2) the statement involved a matter of public concern; and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the statement he made.  Garcetti v. Ceballos, 547 U.S. 410, 418 (2006).  When a public employee makes a statement pursuant to his official duties, he does not speak as a citizen. Garcetti v. Ceballos, 547 U.S. at 421.  Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.  Rankin v. McPherson, 483 U.S. 378, 384

12

(1987).  A public employee's speech involves a matter of public concern if it can be

"fairly considered as relating to any matter of political, social, or other concern to the

community." Meenan v. Harrison, 2008 U.S. App. LEXIS 3025, 9-10 (3d Cir. Feb. 12,

2008) (citing Holder v. City of Allentown, 987 F.2d 188, 195 (3d Cir. 1993)).

Officer Hill's contention that his union activity is protected speech must fail under

these circumstances.  Any activity or related speech which allegedly led to retaliation

against him was conducted pursuant to his official duties as a union delegate acting on

behalf of employees of a municipal agency, and not as a citizen.  Furthermore, Officer

Hill's representation of Officer Osborne concerned private matters between Officer

Osborne and Defendant Porter, and not matters of public concern.  His activities as a

union representative do not rise to the level of being protected speech under the First

Amendment.  Thus, I will grant summary judgment in favor of the defendants on this

claim.

### 2.  Fifth and Fourteenth Amendments

Officer Hill next argues that the conduct of the defendants deprived him of his

substantive and procedural due process rights.  Am. Compl. at ¶ 45.  The procedural due

process rights, he insists, are guaranteed by the Fifth Amendment which "protects

individuals from the deprivation of property interests without due process of law, thereby

providing procedural due process protections such as Miranda rights and Weingarten

rights."  Am. Compl. ¶ 43. The Fourteenth Amendment contains "a substantive due

process requirement that any governmental action taken not be arbitrary or capricious." Id. at ¶ 44.

In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court recognized the inherent coercive effects present during a custodial interrogation and held that the Fifth and Fourteenth Amendments' prohibitions against compelled self-incrimination necessitate certain procedural safeguards before an individual may be subject to a custodial interrogation.  384 U.S. at 468.  Specifically, the Court held that before an individual is subjected to custodial interrogation, he must be informed that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.  Id. at 479.  The right to counsel protection is premised on the belief that the presence of counsel will ensure that a custodial interrogation will conform with the Fifth and Fourteenth Amendments' dictates regarding the privilege against self-incrimination.  Id. at 466.

Officer Hill argues that during the impromptu meeting with Defendant Porter and Officer Shaw, Defendant Porter accused Officer Hill of sexual misconduct with a female inmate which is a crime in Pennsylvania, i.e., institutional sexual assault.  Defendant Porter, Officer Hill insists, should have therefore advised him of his Miranda rights.

The situation in which Officer Hill found himself that day was not the type anticipated by Miranda.  It was neither a custodial setting nor an official interrogation.

14

Defendant Porter had no authority to detain Officer Hill in his office or to charge him formally with the commission of a crime.  Because the presence of both a custodial setting and official interrogation is required to trigger the Miranda right-to-counsel prophylactic, absent one or the other, Miranda is not implicated.  Alston v. Redman, 34 F.3d 1237, 1244 (3d Cir. 1994).  Thus, there was no violation of Officer Hill's constitutional rights by not being given Miranda warnings.  Alston v. Redman, 34 F.3d at 1246-47.

Officer Hill also alleges that the defendants violated his federally-protected rights when they did not advise him of his Weingarten right to union representation during an investigatory interview.  This claim must also fail.

In National Labor Relations Board v. J. Weingarten, Inc., the Supreme Court upheld a decision of the National Labor Relations Board that an employer's denial of an employee's request that his union representative be present at an investigatory interview which the employee reasonably believed might result in disciplinary action constituted an unfair labor practice.  420 U.S. 251, 252-253 (1975).  Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), provides that it is an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 7 of the Act, 29 U.S.C. § 157.  Section 7 of the Act provides: Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and

15

to engage in other concerted activities for the purpose of collective bargaining or other **mutual aid or protection**, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158 (a)(3) of this title.  29 U.S.C. § 157 (emphasis added).  The Court further held that an employee seeking union representation at a confrontation with his employer falls within the literal wording of Section 7 that employees have the right to engage in concerted activities for the purpose of mutual aid or protection.  NLRB v. Weingarten, 420 U.S. at 260.  The right to representation arises only in situations where the employee requests representation, and where the employee reasonably believes the investigation would result in disciplinary action.  Id. at 257.

As the meeting in Defendant Porter's office progressed and the allegations became known, Officer Hill must have reasonably believed that he could have been facing possible disciplinary action.  Officer Hill was a seasoned union delegate and presumably well-trained in all rights available to him as a union member.  There is neither evidence nor an allegation in the record that Officer Hill requested at any time during the meeting that a union representative be present to advocate on his behalf and/or that such a request was denied by Defendant Porter.

The most persuasive and dispositive fact, however, is undisputed.  Officer Shaw, a union shop steward, was present at the meeting, and available to render aid and protection

for Officer Hill if necessary.  Thus, there was no violation of Officer Hill's <u>Weingarten</u>

rights.  I will also grant summary judgment in favor of the defendants on this claim.

**B. <u>Derivative State Law Claims</u>**

Officer Hill is also suing the individual defendants for intentional infliction of

emotional distress and for defamation.  I note that Commissioner King, Warden Giorla,

Deputy Warden Porter, Warden Anderson, and Captain Hatcher would normally be

immune from the derivative state law tort claims by virtue of the Pennsylvania Political

Subdivision Tort Claims Act (the "Act"), 42 PA. CONS. STAT. § 8541, *et seq*.  The Act

provides that "no local agency shall be liable for any damages on account of any injury to

a person or property caused by any act of the local agency or an employee thereof or any

other person."[4]  42 PA. CONS. STAT. § 8541.  An employee of a local agency is liable for

civil damages only to the same extent as his employing local agency and subject to the

limitations imposed by this subchapter.  <u>Id.</u> at § 8545.  Notwithstanding the immunity the

Act provides, liability may be imposed on a municipality or its employees where (1)

damages would be recoverable at common law or under a statute creating a cause of

action if the injury were caused by a person not protected by immunity, and (2) the claim

falls within one of the statutory exceptions to governmental immunity in Section 8542(b)

of the Act.  <u>Granchi v. Borough of N. Braddock</u>, 810 A.2d 747, 749 (Pa Commw. 2002).

---

[4] A local agency is defined in the Act as a "government unit other than the
Commonwealth government."  42 PA. CONS. STAT. § 8501.

These exceptions pertain to:  (1) vehicle liability, (2) care, custody or control of personal property, (3) real property, (4) trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, and (8) care, custody or control of animals.  See 42 PA. CONS. STAT. § 8542(b).

The above eight exceptions do not apply in this case.  The Act does provide, however, for another exception to governmental immunity which can be applicable to individual defendants being sued in their individual capacities:

> [i]n any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 PA. CONS. STAT. § 8550.

Thus, a municipal employee may be held liable where the actions of the state actor constitute a crime, actual fraud, actual malice, or willful misconduct.  The Supreme Court of Pennsylvania has defined willful misconduct, for the purposes of tort law, to mean conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied.  Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994) (citing Evans v. Philadelphia Transportation Company, 212 A.2d 440 (1965)).  The Third Circuit has interpreted this to

18

hold that willful misconduct has the same meaning as "intentional tort" in the context of public employee immunity under the Act. See Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (citing Delate v. Kolle, 667 A.2d 1218, 1221 (Pa. 1995).

There are no allegations that the conduct of the individual defendants constituted a crime, actual fraud, actual malice, or willful misconduct which would preclude them from receiving the governmental immunity which is generally applicable to individual defendants being sued in their individual capacities. There are, however, allegations that these defendants tenaciously pursued Officer Hill in an effort to reprimand him for violations of prison policy, both real and fabricated. Therefore, while I find that the § 8550 exception to governmental immunity does not apply to these defendants, I will consider, in the alternative, the merits of the derivative state law causes of action.

### 1. Intentional Infliction of Emotional Distress

Officer Hill alleges that the individual defendants engaged in a pattern of retaliation against him because of his union activity intentionally designed to inflict emotional distress upon him. Am. Compl. ¶ 48. He further claims that the defendants' conduct was extreme and outrageous. Id. at ¶ 49.

Pennsylvania has adopted the definition of intentional infliction of emotional distress contained in the Restatement (Second) of Torts. Section 46 of the Restatement provides:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is

19

> subject to liability for such emotional distress, and if bodily
> harm to the other results from it, for such bodily harm.

Restatement (Second) of Torts § 46.  It is for the court to determine, in the first instance,

whether the defendants' conduct is so extreme and outrageous as to permit recovery.  See

Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1274 (3d Cir. 1979).

Under Pennsylvania law, an action for intentional infliction of emotional distress can

arise in an employment context where the injury to the employee is caused by harassment

which is personal in nature and not a proper part of the employer-employee relationship.

Hoy v. Angelone, 720 A.2d 745 (Pa. 1998).  Nevertheless, "it is extremely rare to find

conduct in the employment context that will rise to the level of outrageousness necessary

to provide a basis for recovery for the tort of intentional infliction of emotional distress."

Cox v. Keystone Carbon Company, 861 F.2d 390, 395 (3d Cir. 1988).

Accordingly, the elements of this claim that Officer Hill must satisfy are:  (1) that

the defendants' conduct was extreme and outrageous; (2) that their conduct caused a

person severe emotional distress; and (3) that they acted intending to cause that person

such distress or with knowledge that such distress was substantially certain to occur.

A legally cognizable claim for intentional infliction of emotional distress must be

based upon conduct that is "so outrageous in character, and so extreme in degree, as to go

beyond all possible bounds of decency, and to be regarded as atrocious and utterly

intolerable in a civilized society."  Hoy v. Angelone, 720 A.2d at 754.  One of the

comments to this section of the Restatement makes clear that conduct is sufficient to

20

make out a claim for emotional distress if "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"  <u>See</u> Restatement (Second) of Torts § 46, cmt. d.

A review of the amended complaint reveals no such conduct here.  Officer Hill alleges that his representation of a fellow union member during grievance proceedings resulted in retaliation against him.  For example, Officer Hill alleges that his superiors questioned him regarding an allegation of sexual misconduct brought by a female inmate, and that although the inmate named three correctional officers, the superiors only questioned him.  Certainly, one would hope that prison officials would investigate such allegations.  That he was the only one of three officers interrogated is speculation on Officer Hill's part.  He has offered no evidence to prove such a bald assertion.  Officer Hill also complains that he was disciplined for refusing to follow a direct order to write a memorandum concerning the allegation of sexual misconduct, and that his was the only vehicle given a parking ticket for parking in an unauthorized parking space.  These examples show the defendants' appropriate responses to Officer Hills violations of prison regulations.  Officer Hill also alleges that he was improperly disciplined for bringing a cellphone into the prison and then abandoning his post at the prison, both actions against prison regulations.  As with the allegations of sexual misconduct and the parking ticket, Officer Hill was exonerated after an investigation.  Further, Officer Hill's claim that he was continually denied promotions without cause remains unsubstantiated.

Accepting these facts as true, I conclude that as a matter of law, the facts alleged do not rise to the level of being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  Hoy v. Angelone, 720 A.2d at 754.

Furthermore, to recover for intentional infliction of emotional distress in Pennsylvania, a plaintiff must support the claim of emotional distress with competent medical evidence, in the form of expert medical evidence.  Kazatsky v. King David Memorial Park, 527 A.2d 988, 995 (Pa. 1987); see also Debellis v. Kulp, 166 F.Supp.2d 255, 281 (E.D. Pa. 2001).  Because Officer Hill has not offered any medical evidence to support his claim for intentional infliction of emotional distress, I will grant summary judgment on this claim in favor of the defendants.

### 2. Defamation

Officer Hill next alleges that the defendants did not keep the investigation into the alleged sexual misconduct confidential as required by prison regulations.  He received inquiries from other prison employees regarding those allegations, and assumes that those employees learned of the allegations from the defendants which prompted this claim of defamation against them.  To establish a *prima facie* claim of defamation pursuant to Pennsylvania law, a plaintiff must prove that: (1) the communication was defamatory in nature; (2) the communication was published by the defendants; (3) the communication applied to the plaintiff; (4) the recipient of the communication understood its defamatory

meaning and its application to the plaintiff; (5) the plaintiff suffered special harm as a result of the communication's publication; and (6) the abuse of a conditionally privileged occasion.  42 PA. CONS. STAT. ANN. § 8343(a).  Under Pennsylvania law, the court must determine, in the first instance, whether the statements are capable of defamatory meaning.  City of Rome v. Glanton, 958 F. Supp. 1026, 1041 (E.D. Pa. 1997).  A statement is defamatory if it "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  Id. (quoting United States Healthcare v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 923 (3d Cir. 1990)).  Officer Hill claims, and I agree, that the statement that he had engaged in sexual misconduct with an inmate is defamatory *per se*.  Am. Compl. ¶ 52.

Officer Hill alleges, however, that the defamatory statement was communicated by the individual defendants to others working in the prison system.  This is another bald assertion which Officer Hill has produced no evidence to support.  The defendants claim that the statement was made by the female inmate, not by the defendants.  That claim has not been refuted by Officer Hill.

Next, "it is axiomatic that, since the plaintiff's reputation that is protected is the esteem in which others hold him, publication to an **identified** third person is an essential element of actionable defamation."  Raneri v. DePolo, 441 A.2d 1373, 1375 (Pa. Commw. 1982) (emphasis in original).  Officer Hill alleged that other prison employees

23

mentioned to him that they had heard about the allegations.  He failed, however, to identify specifically any of those employees or how they had learned of the allegations.

For these reasons, I will grant summary judgment on this claim in favor of the defendants.

### 3. Loss of Consortium

Plaintiff Katrina Hill brought a claim for loss of consortium.  "Under Pennsylvania law, a spouse's right to recover for loss of consortium derives only from the other spouse's right to recover in tort."  Danas v. Chapman Ford Sales, Inc., 120 F. Supp. 2d 478, 489 (E.D. Pa. 2000) (citing Murray v. Commercial Union Ins. Co., 782 F.2d 432, 438 (3d Cir. 1986)).  Based on the foregoing, I will dismiss Katrina Hill's loss of consortium claim against the defendants in Count III which is derived from her husband's unsuccessful claims.

An appropriate Order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC HILL, et al., | : | CIVIL ACTION |
| Plaintiffs | : | |
| | : | |
| v. | : | NO. 05-6574 |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |
| Defendants | : | |

## <u>O R D E R</u>

**STENGEL, J.**

     **AND NOW**, this   30th      day of June, 2008, upon consideration of the

defendants' uncontested motion for summary judgment (Document #35), it is hereby

ORDERED that the motion is GRANTED in its entirety.

     The Clerk of Court shall mark this case CLOSED for all purposes.


                    BY THE COURT:


                    /s/ Lawrence F. Stengel
_____
                    LAWRENCE F. STENGEL, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIC HILL, et al.,** | : | **CIVIL ACTION** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **NO. 05-6574** |
| | : | |
| **CITY OF PHILADELPHIA, et al.** | : | |
| **Defendants** | : | |

## O R D E R   O F   J U D G M E N T

**STENGEL, J.**

**AND NOW**, this    30th       day of June, 2008, in accordance with my Order

granting the defendants' motion for summary judgment, and in accordance with Federal

Rule of Civil Procedure 58, judgment is hereby entered on behalf of the defendants and

against the plaintiffs.


BY THE COURT:


_____        /s/ Lawrence F. Stengel
                                             LAWRENCE F. STENGEL, J.